UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:  Case Number: 20-11746-11

ATVT LLC,

        Debtor.

### DECISION ON APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE COMPENSATION

The matter before the Court is the Application for Allowance of Administrative Compensation [ECF No. 284] ("Application") brought by Krekeler Strother, S.C ("Krekeler") and Baum Revision, LLC ("Baum") (together, the "Applicants") as counsel for Garver Feed Mill Master Tenant, LLC ("Garver"). The Debtor, the United States trustee, the Subchapter V trustee ("Wallo"), and the Debtor's primary secured creditor, Summit Credit Union ("Summit") (collectively, the "Objectors"), all oppose the Application.

This matter questions to what extent, if any, a landlord is entitled to an administrative expense claim, and what standards should be applied to specific time periods in a bankruptcy case.

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The Application is a claim asserted against the bankruptcy estate arising out of post-petition actions related to a lease between Debtor and Garver and is an application for payment of an administrative expense pursuant to 11 U.S.C. § 503. It falls within the parameters of "allowance or disallowance of claims

against the estate," as well as "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2) (A), (B), and (O).

## BACKGROUND

Debtor fermented and bottled kombucha. It sold its product in bottles, growlers, and kegs. It operated its business in leased space. Garver was Debtor's landlord.

Following a series of financial challenges, it filed a chapter 11 on July 6, 2020. The stated intention of Debtor was to operate its business to preserve going concern value while pursuing a sale.

The statutory deadline to assume or reject a nonresidential real property lease under 11 U.S.C. § 365(d)(4)(A)(i) was November 4, 2020. Debtor concluded it could not make a decision within the 120-day period. On September 30, Debtor requested an extension of that deadline through and including February 2, 2021. The articulated basis for the extension was to permit the Debtor adequate time to complete selling its assets as an operating business. Garver opposed this request.

Five days later, the Debtor filed a Motion to Sell Property Free and Clear of Liens. The motion included a proposed Asset Purchase Agreement ("APA") and bid procedures. Debtor also filed a plan on that date. About two weeks later, the Court entered an order approving the sale procedures. It established procedures for due diligence, qualification of potential bidders, and approval of the form of the stalking horse APA. Anticipating an expedited sale process,

2

Debtor proposed November 9 as the date for an auction if there were competing bids. The Court set a final hearing on approval of the sale for the next day.

Despite the proposed early November sale date, Debtor argued there were reasons to extend the deadline to assume or reject the lease into February 2021. It argued that if forced to assume within the statutory time, there may be unnecessary burden on the estate in the form of administrative expenses if it was later determined lease assumption is not required. Similarly, it argued that premature rejection of the lease would leave the Debtor without the ability to operate its business and cripple the Debtor's ability to maximize recovery efforts for the benefit of creditors. Finally, it explained that even if the buyer did not want to assume the lease, it might be necessary for the Debtor to remain in the leased property for a period after confirmation of a sale both to await the actual closing and to dispose of, surrender, or return items not included in the sale in an orderly fashion. Further, the Debtor expressed that the extension would provide the best recovery possible because buyers will have the option to assume the lease.

When asked by the Court why Debtor needed 90 more days when a sale hearing was scheduled in about a month, counsel stated that the added time *after* the sale was to give the potential buyer time to remove the purchased assets. This timeline came from the initial stalking horse who estimated this would be about how long it would take to remove the items. The extension was also supported by the Debtor's principal secured creditor, Summit, who concurred that once the assets were sold, continued occupancy by a buyer to

remove the goods may encourage a buyer to bid, which would either directly or indirectly enhance and maximize value for the benefit of Summit.

### DISCUSSION

Objectors contend that the attorneys' fees and costs of Garver are merely part of its termination damages under 11 U.S.C. § 502(b)(6). While there was unpaid post-petition rent when the Application was filed, it has since been paid. So the only remaining part of the Application unpaid are the attorneys' fees and costs. The Objectors argue that under section 502(b)(6), a landlord's claim for damages is limited to the amounts resulting from termination of a lease and that, since Garver did re-let the property, it would only be post-petition breaches that would give rise to a claim under this section.

And the Objectors argue the sums do not qualify for administrative expense treatment under section 503(b)(1) because the amounts were not actual or necessary costs and expenses of preserving the estate. So, the argument goes, any costs or attorneys' fees are simply part of the rejection damages and are therefore simply pre-petition unsecured claims.

Section 502 does not purport to limit administrative expense claims by a landlord based on use or possession post-petition. Section 365(b)(3) requires timely performance by debtor of its obligations. Section 503 gives rise to claims for actual use or benefit. *See, e.g., GE Capital Credit Commercial, Inc. v. Sylva Corp. (In re Sylva Corp.)*, 519 B.R. 776 (B.A.P. 8th Cir. 2014). But actual use is not always required. *Kimzey v. Premium Casing Equip., LLC,* No. 16-CV-01490,

2018 U.S. Dist. LEXIS 42744, 2018 WL 1321971 (W.D. La. Mar. 14, 2018); *In re Sturgis Iron & Metal Co.*, 420 B.R. 716 (Bankr. W.D. Mich. 2009).

The focus of section 503(b)(1) is the preservation of the estate. *See, e.g., In re Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984); *see also In re ASARCO LLC*, 441 B.R. 813 (S.D. Tex. 2010) ("The purpose of awarding such expenses (and granting them priority status) is to permit the debtor's business to operate for the benefit of its prepetition creditors.") (internal quotations omitted). This is more than just payment of what might be thought to be reasonably advisable to protect against dissipation. *See Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432 (5th Cir. 2019) ("A benefit to the estate can come in different forms."). It includes amounts that maximize value for creditors, that incentivize creditors to continue to do business with debtors, or that preserve value. 4 *Collier on Bankruptcy* ¶ 503.06[1] ("[P]reservation may also include and be a means to other ends in the administration of an estate, such as the continuation of the business or an orderly liquidation."). It includes expenses that benefit the debtor.

Applicants have provided time detail. It confirms the amounts sought were incurred post-petition. A portion, in the amount of $11,337.25, are the fees of outside counsel retained by Garver (ECF No. 284, p. 23). The balance ($8,206.25) is an amount requested to compensate Garver in some way for time spent by its in-house counsel, Baum (ECF No. 284, p. 24).

As for the latter, no evidence has been presented that Garver incurred any expense for in-house counsel. There is nothing to suggest that the hourly

5

rate is a usual or customary rate or that Garver pays inside counsel at that rate. There is no basis in the record to conclude that any portion of the services provided by in-house counsel were a benefit to the estate or in any way protected or preserved value. The tasks performed are the tasks any creditor performs when confronted with a bankruptcy, communicates with its attorney, and decides how to proceed. For these reasons, the portion of the Application seeking compensation for the services of Baum is denied.

But the services of Krekeler require closer scrutiny. Many of the services are services provided by any attorney reviewing a bankruptcy case and discussing it with their client. Reviewing schedules, docket entries, checking on the status of amounts owed by the debtor to the client, reviewing first day motions or sale motions, and communicating with a client about those matters, benefits the client but has not been shown to benefit the estate.

On the other hand, there was a small post-petition default. Further, Debtor did not assume or reject within the statutory period. Instead, Debtor moved to extend the 120-day period for an additional 90 days. The extension sought was beyond any projected sale date.

Debtor argued:

- if forced to assume within the statutory time, then there could be unnecessary administrative expenses burdening the estate;

- premature rejection of the lease would leave the Debtor without the ability to operate its business and cripple the Debtor's ability to maximize recovery efforts for the benefit of creditors;

- it might be necessary for the Debtor to remain in the leased property for a time after confirmation of a sale; and

6

- it will provide the best recovery possible to Debtor because buyers will have the option to assume.

Summit echoed these sentiments. It agreed that the stalking horse desired extra time, that items not included in the sale may need to be returned post-sale, and that the extension would benefit Summit and maximize value by providing options for potential buyers.

No doubt the request for extension of time to assume or reject the lease, the hearing on the request, and the negotiations it prompted benefitted the estate. It is the Debtor—supported by the Objectors—who made the case this was a benefit to the estate and that it would maximize value for creditors.

A review of the Krekeler time detail reveals time entries directly related to the lease and its extension that dovetail with the articulated needs of the Debtor. In particular:

- default related to past due rent for real estate taxes;
- considerations related to the furniture, fixtures and equipment treatment under the lease;
- lease termination;
- motion to extend time to assume or reject the lease including attendance at a hearing on the motion; and
- the motion related to lease rejection.

These time entries total 1.7 hours for Attorney Angell and 1.15 hours for Cheryl Watson, a paralegal. At their respective hourly rates of $275 and $115, the fees total $599.75.

But for the Debtor's request for an extension of time, the lease would either have been assumed or rejected on November 4. Based on the position taken by Debtor and Summit in connection with the request for an extension of time, that date would have had negative implications for the sale process. It could have impaired continued operation of Debtor's business. And it would have impaired the ability to maximize the estate. Thus, the work related to review of the lease and the motion for extension and its possible termination all align with the goals of preserving the estate by maximizing value for creditors, incentivizing the creditors to continue to do business with the Debtor, and preserving value.

## Conclusion

For these reasons, the administrative expense claim of Krekeler Strother, S.C., as attorney for Garver, is allowed in the amount of $599.75. The administrative expense claim for Baum is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: March 12, 2021

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge